# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **APRIL HALLERON, MD,**<br><br>　　　　　　　　　　**Plaintiff,**<br>v.<br><br>**RELIANCE STANDARD LIFE INSURANCE COMPANY,**<br><br>　　　　　　　　　　**Defendant.** | Civil Action No. <u>3:22CV-633-GNS</u><br><br>**COMPLAINT** |

## INTRODUCTION

1. This complaint seeks legal and equitable damages arising from and relating to a short-term ("STD") and a long-term ("LTD") disability insurance policy issued and underwritten by Defendant.

2. The headings contained in this complaint are intended only to assist in reviewing the statements and allegations contained herein. To avoid the unnecessary repetition in each section, Plaintiff hereby affirms and incorporates each paragraph in each section of this complaint as though fully set forth therein.

3. The factual allegations found in this complaint are not exhaustive and are presented throughout this complaint so as to provide Defendant with the requisite notice of the basis for Plaintiff's allegations.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over the claims asserted in this action for monetary and equitable relief under Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

5. Venue is appropriate in the United States District Court for the Western District of Kentucky pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff April Halleron, MD ("Dr. Halleron") is a citizen of the United States, a resident of the Commonwealth of Kentucky, and an insured participant under the disability insurance policies at issue in this lawsuit.

7. Defendant Reliance Standard Life Insurance Company ("Reliance Standard") is the insurer of the disability insurance policies at issue in this lawsuit. Reliance Standard does business as an admitted insurer, and can be regularly found operating, within the Commonwealth of Kentucky. Reliance Standard's agent for service of legal process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601.

## FACTS

8. Dr. Halleron is insured under the STD and LTD policy issued and underwritten by Reliance Standard—the disability insurance policies.

9. Beginning in March 2022, because of the physical limitations resulting from her disabling conditions and corresponding treatment regimen, Dr. Halleron was forced to significantly reduce her full-time work schedule as part of her treatment plan.

10. In late June 2022, again because of the physical limitations resulting from her disabling conditions and corresponding treatment regimen, Dr. Halleron was unable to perform all of the material duties of her position as a staff physician.

11. Dr. Halleron applied for the disability benefits under each of the disability policies.

12. In support of her claims, Dr. Halleron provided her complete and full cooperation—including completing all requested forms and releases, as well as providing all

requested information.

13. Dr. Halleron demonstrated that she was, and remained, under the regular care of her treating physicians.

14. Dr. Halleron's treating physicians objectively determined the cause of Dr. Halleron's physical and functional limitations—her disability. Her treaters' treatment plan included an initial period of no work—from July through September—and a modified work schedule thereafter.

15. Dr. Halleron complied with the treatment plan of her treating physicians and ceased working as a staff physician for the period July through September, only to then return on a modified work schedule of 25 hours.

16. In response to Dr. Halleron's claim for disability benefits under each of the insurance policies, Reliance Standard did not render any decision.

17. Instead, Reliance Standard referred Dr. Halleron's claims to a third-party administrator—Matrix Absence Management ("Matrix").

18. Whereas Matrix is not identified in either of the insurance policies, it does appear on the Kentucky Department of Insurance database as a licensed third-party administrator for Kentucky insurance claims.[1]

19. The only individual authorized to act under Matrix's Kentucky administrator license is Donn Foster.[2] However, Mr. Foster was not involved with and did not administer Dr. Halleron's disability insurance claims. The claims were respectively administered by Marlene Raymond (STD decision) and Janice Scott (LTD)—again, neither of whom are authorized and

---

[1] *See* https://insurance.ky.gov/ppc/Agent/ALDetails.aspx?LookupVal=616131&Type=2.
[2] *See* https://insurance.ky.gov/ppc/Agent/ALAffiliations.aspx?Type=2&LookupVal=616131.

licensed to administer claims in Kentucky.

20. The STD policy provides Dr. Halleron with up to twelve (12) weeks of income benefits should she become disabled—unable to perform her material duties as a staff physician.

21. The STD weekly benefit applicable to Dr. Halleron is $1,500 which, not including accrued interest, amounts to $18,000.

22. Reliance Standard failed to pay Dr. Halleron any of her STD weekly benefits.

23. The sole reason for Reliance Standard's refusal to pay was based on the decision from Ms. Raymond—with Matrix—that her claim appeared to be subject to a "pre-existing condition" limitation. Reliance Standard did not dispute that Dr. Halleron otherwise satisfied the STD definition of disability.

24. Dr. Halleron's STD claim could not be subject to any "pre-existing" limitation including by way of example, and not exclusive, her coverage date was more than 12-months prior to her claim and her disabling condition did not fall within the limitation.

25. Reliance Standard's denial of Dr. Halleron's STD benefits was not made in good faith and, in accordance with the policy terms, entitles her to receive twelve percent (12%) interest on each of the unpaid weekly benefits.

26. The STD policy does not contain an appeals process and, as such, Dr. Halleron now properly seeks relief from this Court.[3]

27. In addition to not containing an appeals process, Reliance Standard's denial of Dr. Halleron's STD benefits did not comply with the ERISA claim regulations. By way of example,

---

[3] *See Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 888 (6th Cir. 2020) ("In keeping with this intent, we hold today that for a plan fiduciary to avail itself of this Court's exhaustion requirement, its underlying plan document must—at minimum—detail its required internal appeal procedures.").

and not exclusive, the denial decision:

    a.    failed to establish and maintain reasonable procedures governing the notification of benefit determinations.

    b.    failed to have the claim decision conducted an appropriate named fiduciary of the plan.

    c.    failed to provide a description of any additional material or information necessary for Dr. Halleron to perfect her claim and an explanation of why such material or information was necessary.

    d.    failed to consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment—relying instead on the record review opinions of a nurse.

28.    The LTD policy provides Dr. Halleron with a monthly benefit for the duration of her disability through a maximum date of age 67. As with the STD policy, the definition of disability is based of Dr. Halleron's ability to perform her duties as a staff physician.

29.    The LTD monthly benefit applicable to Dr. Halleron is $10,000.

30.    Reliance Standard failed, and continues to fail, to pay Dr. Halleron any of her LTD benefits.

31.    The reason for Reliance Standard's refusal to approve Dr. Halleron's claim for LTD benefit was on a decision from Ms. Scott—with Matrix—that "there was no evidence of a physical condition that rose to a level to have prevented you from having work capacity" as of March 11, 2022.

32.    Dr. Halleron's disability date, as confirmed in the claim file was, July 1, 2022—not March 11, 2022: "Please set-up a LTD claim …. DOL: 7/1/2022." The denial decision was

based on an incorrect date as well as ignoring the treatment plan provided by Dr. Halleron's physicians restricting her from work beginning July 1.

33. As a result, Reliance Standard's denial of Dr. Halleron's LTD benefits was not made in good faith and, in accordance with the policy terms, entitles her to receive twelve percent (12%) interest on each of the unpaid monthly benefits.

34. The LTD policy provides both total and partial (rehabilitative) disability benefits.

35. Based on her inability to perform her material duties as a staff physician for the July through September period, Dr. Halleron satisfied the LTD policy elimination period of ninety (90) days of total disability.

36. Subsequently, Dr. Halleron continued (and continues) to satisfy the LTD policy definition of disability—entitling her to receive the monthly benefits.

37. Whereas the LTD policy contains a permissive appeals process, it also contains express requirements that Reliance Standard must comply should it deny a claim in relevant part as follows:

> For any adverse benefit decision, our notice will include:
>
> (1) The specific reason or reasons for such decision;
>
> (2) Reference to specific plan/Policy provisions on which the decision was based;
>
> (3) A description of the additional material or information necessary for the Insured to perfect the claim and an explanation of why such material or information is necessary …
>
> (5) A discussion of the decision, including an explanation of the basis for disagreeing with or not following:
>
> > a) The views presented by the Insured to the plan of health care professionals treating the Insured and vocational professionals who evaluated the Insured;

38. In addition to basing its review and decision on an incorrect date, Reliance

Standard's decision:

    a.    failed to identify which of the policy provisions it was using for the definition of disability—instead citing to all of the definitions for all classes of employees--as well as to cite to any of the policy provisions concerning partial (rehabilitative) disability.

    b.    failed to inform Dr. Halleron of any additional information or material she should submit in order to perfect her claim, as well as explanation as to why it was needed.

    c.    failed to explain, let alone discuss, Dr. Halleron's treater opinions concerning her disability, including the attending physician statement that confirmed her treatment plan beginning with her work restrictions effective July 1.

39.    In addition to the policy terms, Reliance Standard's denial of Dr. Halleron's LTD benefits did not comply with the ERISA claim regulations. By way of example, and not exclusive, the denial decision:

    a.    failed to establish and maintain reasonable procedures governing the notification of benefit determinations.

    b.    failed to have the claim decision conducted an appropriate named fiduciary of the plan.

    c.    failed to provide a description of any additional material or information necessary for Dr. Halleron to perfect her claim and an explanation of why such material or information was necessary.

    d.    failed to consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment—

relying instead again on the record review opinions of a nurse.

40. In administering Dr. Halleron's claims, as the denial letters make clear, Reliance Standard actively sought to deny her disability insurance benefits.

41. Dr. Halleron has met and continues to meet the respective requirements of the LTD Policy necessary to receive—and continue to receive—disability benefits.

42. At all times relative hereto, Reliance Standard has been operating under an inherent and structural conflict of interest because any disability benefits provided to Dr. Halleron are paid from Reliance Standard's own assets with each payment depleting those same assets.

43. Based on Reliance Standard's failure to strictly adhere to the ERISA claim regulations (*see supra*), Dr. Halleron is deemed to have exhausted her administrative remedies and is entitled to pursue the relief requested herein.[4]

44. Reliance Standard's failure to strictly adhere to the ERISA claim regulations was not *de minimis* but represents a pattern and practice of violating the claim regulations.

45. Reliance Standard's failure to strictly adhere to the ERISA claim regulations both prejudiced and harmed Dr. Halleron.

46. Dr. Halleron's complaint is timely and is not otherwise time barred.

## CLAIMS

**A.    Breach of Contract**

47. The disability insurance policies constitute written contracts.

---

[4]   *See* 29 CFR 2560.503-1(l)(2)(i) ("In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan…Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

48. Reliance Standard breached the terms of the disability insurance policies by, among other things, improperly denying Dr. Halleron's disability benefits.

49. Reliance Standard's breach of the disability insurance policies damaged Dr. Halleron, not only in the loss of her disability benefits, but also in the loss of earnings on her disability benefits, the loss of opportunity, and the attorneys' fees and costs incurred.

50. 29 U.S.C. §§1132(a) is the enforcement mechanism permitting Dr. Halleron to enforce the contractual terms of the disability insurance policies, to receive reinstatement and payment of past-due disability benefits, to obtain declaratory relief, and to obtain other appropriate equitable relief including, but not limited to, surcharge, make-whole relief, and disgorgement.

**B.    Attorneys' Fees & Costs**

51. As a result of Reliance Standard's improper conduct, Dr. Halleron has incurred attorneys' fees and costs.

52. 29 U.S.C. §1132(g) is the enforcement mechanism permitting Dr. Halleron to recover her reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

53. Dr. Halleron requests the Court enter judgment in her favor and against Reliance Standard on all claims asserted herein, to include legal and equitable relief as appropriate.

54. Dr. Halleron requests the Court award reasonable attorneys' fees and costs.

55. Dr. Halleron requests the Court award pre- and post-judgment interest at greater of the 12% policy rate, or the rate earned by Reliance Standard on the unpaid benefits.

56. Dr. Halleron requests the Court award any and all other legal or equitable relief to which she may be entitled.

57. Dr. Halleron requests leave to amend her claims when and as necessary to ensure

she receives substantial justice.

58. Dr. Halleron requests the Court deem her pleadings to confirm to the evidence.

* * * * * * * * * *

Dated:  December 1, 2022                    Respectfully submitted,

/s/ Michael D. Grabhorn

**Grabhorn Law | Insured Rights®**
Michael D. Grabhorn, CLU ChFC
(KBA 89842)_
*m.grabhorn@grabhornlaw.com*
Andrew M. Grabhorn
(KBA 96477)
*a.grabhornlaw@grabhornlaw.com*
2525 Nelson Miller Parkway, Suite 107
Louisville, Kentucky  40223
p: 502.244.9331
f: 502.244.9334

***Counsel for Plaintiff***